IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-00031-M

| | |
|---|---|
| **Aniya Tseir Priest,** | |
| Plaintiff, | |
| v. | **Memorandum & Recommendation** |
| **Commissioner of Social Security**, | |
| Defendant. | |

Plaintiff Aniya Priest challenges an Administrative Law Judge's decision to deny her application for social security income. Priest claims that the ALJ made three errors in reaching that determination. First, the ALJ failed to account for all of Priest's non-exertional limitations when formulating her residual functional capacity (RFC). Second, she erred in evaluating the medical opinion evidence as it relates to Priest's mental limitations. And third, the evidence does not support the ALJ's conclusion that Priest could meet the exertional demands of light work with sitting, standing, and walking in one-hour increments. Both Priest and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 12, 14, 15.

After reviewing the parties' arguments, the undersigned has determined that the ALJ erred in her determination. The ALJ did not explain how working in two-hour increments accounts for Priest's moderate limitations in maintaining concentration, persistence, or pace. The ALJ also erred in considering the medical opinion evidence in two ways. First, she excluded a limitation from evaluations with which she agreed. And second, she offered no sound basis to reject some findings assessed by the consultative examiner. Finally, it is unclear what evidence supports a conclusion that Priest can alternate positions every hour or the details of that limitation. So the

undersigned recommends that the court grant Priest's request, deny Bisignano's request, and remand this matter to the Commissioner for further consideration.[1]

## I.     Background

### A.     Factual

In 2021, providers diagnosed Priest with hypothyroidism, obesity, and chronic low back pain. Tr. at 78. The next year, she reported increased anxiety and noted her history of panic attacks. *Id*. She displayed a normal mood and affect. *Id*. Providers diagnosed generalized anxiety disorder with panic attacks, for which they prescribed medication and referred her for counseling. *Id*.

Later that year, Priest was receiving behavioral health treatment for her anxiety and panic attacks. *Id*. She reported feeling fair, with medication improving her anxiety, although she continued to feel anxious. *Id*. Providers continued her previous assessments. *Id*.

In August, Priest was doing fair when she visited Roanoke Chowan Community Health Center. *Id*. She was concerned that her weight had increased and felt fatigued on most days with poor sleep. *Id*. Priest's mood was stable with medication and she continued with her psychiatric treatment. *Id*. And examination noted obesity but unremarkable mental status findings. *Id*.

Five months later, Priest reported that she did not exercise because of her back pain and lack of energy. *Id*. She felt her mood was fairly stable with medication. *Id*.

Later that month, Dr. Stephen Sanders performed a consultative examination. Tr. at 79. Priest noted anxiety as well as headaches and stomach issues. *Id*. She had decreased energy and interest but denied depression. *Id*. Priest saw a psychiatrist every two months but had no history of counseling. *Id*.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

An examination found a mildly anxious mood. *Id*. Dr. Sanders diagnosed generalized anxiety disorder with a guarded prognosis. *Id*. She could relate to others, sustain attention and concentration, perform simple, repetitive tasks, and tolerate a limited amount of stress. *Id*.

Mary Berry, NP, conducted a consultative evaluation the following month. Tr. at 80. Priest reported she could perform basic chores and daily activities without assistance. *Id*. Aside from reduced range of motion, an examination noted no remarkable findings. *Id*. Berry assessed chronic lumbar pain, generalized anxiety disorder, and a possible somatic disorder related to her anxiety. *Id*. She could sit, stand, and walk intermittently and lift and carry up to ten pounds. *Id*.

Priest underwent a psychological assessment later that year. *Id*. Her diagnoses included autism spectrum disorder, generalized anxiety disorder, and panic and somatic disorders. *Id*. Testing revealed attention problems resulting in inattention, distractibility, poor working memory, and forgetfulness. Tr. at 675.

At a June 2023 appointment, Priest reported having good days and bad days. Tr. at 80. She was in bed for the past month because she had no energy. *Id*. A physical examination yielded no remarkable findings. *Id*. Her mood remained stable with medication, and she continued psychiatric visits every two months. *Id*.

At the initial level, a state agency consultant found that she could perform medium work with occasional stooping. Tr. at 81. On reconsideration, the state agency consultant concluded that Priest could perform light work with frequent stooping. *Id*. State agency psychological reviewers determined that she was capable of simple, routine, repetitive tasks in a stable work setting with no extensive social interaction. *Id*.

3

A function report reflects that Priest experienced "near constant" back pain along with increased joint pain. Tr. at 178. She had trouble finishing simple tasks because of pain and cognitive difficulties. Tr. at 182.

Priest testified that she lived with her mother. Tr. at 77. She has never had a driver's license or held a job. *Id.* Her back pain made it difficult for Priest to stand, walk, and lie down. *Id.* And the treatments she has tried have not worked. *Id.*

Priest noted that she takes medication for pain as well as anxiety. *Id.* She was no longer immobile for hours like she used to be. *Id.* Priest experiences stomach issues that cause pain and interfere with her ability to focus. *Id.* And she has difficulty being in crowds. *Id.*

**B.      Procedural**

In May 2022, Priest applied for supplemental security income alleging a disability that began in 13 months earlier.[2] After the Social Security Administration denied her claim at the initial level and upon reconsideration, Priest appeared for a telephonic hearing before an ALJ to determine whether she was entitled to benefits. The ALJ determined Priest had no right to benefits because she was not disabled. Tr. at 72–83.

The ALJ found that Priest lived with several severe impairments. Among these were obesity, hypothyroidism, generalized anxiety disorder, autism spectrum disorder, a panic disorder, and a somatic symptoms disorder. Tr. at 74. The ALJ also found that Priest's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 75.

Next, the ALJ determined that Priest had the residual functional capacity (RFC) to perform light work with other limitations. Tr. at 76. She can sit, stand, and walk six hours each in an eight-

---

[2] The amended alleged disability onset date is May 2022. Tr. at 72.

hour workday but can maintain each position in one-hour increments. *Id*. Priest can frequently climb, stoop, kneel, crouch, and crawl. *Id.*

Priest can sustain concentration, persistence, and pace in two-hour intervals. *Id.* She cannot interact with the public. *Id*. And Priest requires a work environment with few, if any, changes. *Id*.

Then the ALJ concluded that Priest had no past relevant work. Tr. at 81. But considering her age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Priest could perform. Tr. at 82. These include merchandise marker, small parts assembler, and router. *Id*. These findings led the ALJ to conclude that Priest was not disabled. Tr. at 83.

After the Appeals Council declined review, Priest commenced this action in June 2025. D.E. 1. Both parties seek the court to issue a decision in their favor. D.E. 12, 14, 15.

## II.    Analysis

Priest contends that the ALJ omitted any restrictions from the RFC to address her moderate limitations in concentration, persistence, and pace. It is unclear how sustaining attention in two-hour segments, as the RFC allowed, addresses her deficits in this mental functioning domain. And the ALJ did not explain why she omitted a limitation for simple, routine tasks that state agency reviewers found. Nor did she offer a sound basis for rejecting the consultative examiner's non-exertional restrictions.

What's more, a review of the decision does not disclose the evidence supporting a conclusion that Priest could sit, stand, and walk in one-hour increments. And this restriction requires additional explanation about whether alternating positions is to be done at will or on a schedule, and if doing so it will cause Priest to be off task.

These errors form grounds to remand the matter.

### A. Standard for Review of the Commissioner's Final Decision

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id.*

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id.*

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is unwarranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id.*

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.     Residual Functional Capacity

Priest contends that the RFC fails to adequately address her moderate limitations with in concentrating, persisting, and maintaining pace. The Commissioner argues that RFC addressed any such difficulties by limiting Priest to work performed in two-hour intervals. The undersigned

7

finds that the non-exertional limitations fail to address her difficulties in this functional domain. Because the RFC does not account for her challenges or explain why no other restrictions are needed, the undersigned cannot conclude that substantial evidence supports the RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments regardless of whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record

8

evidence." *Radford* v. *Colvin,* 734 F.2d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis

9

complied with [Soc. Sec. Ruling] 96-8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

In *Mascio*, the Fourth Circuit found that a limitation to simple, routine tasks or unskilled work may fail to address a moderate limitation in concentration, persistence, or pace. 780 F.3d at 638. The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded *Mascio*. *Id*; *see also Shinaberry* v. *Saul*, 952 F.3d 113, 122 (4th Cir. 2020) (holding that ALJ decision comported with *Mascio* where the ALJ explained why evidence supported mental limitation to simple, routine, repetitive tasks and included limitations in the hypothetical questions).

Although an ALJ's findings at step three may not require any added limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide an adequate explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs* v. *Colvin*, No. 3:14-CV-466, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015); *Reinhardt* v. *Colvin*, No. 3:14-CV-00488, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015).

The ALJ found that Priest could perform light work with other limitations. Tr. at. 76. She could sit, stand, and walk for up to six hours each over an eight-hour workday, with a limitation to maintain each of those positions in one-hour intervals. *Id*. And she could frequently perform many

10

postural movements. *Id*. Priest could concentrate, persist, and maintain pace in two-hour segments. *Id*. And Priest had restrictions on interacting with the public and adapting to changes. *Id*.

### 1. Concentration, Persistence, and Pace

Priest argues that the RFC fails to fully address her non-exertional limitations. She asserts that the restriction that she can sustain concentration for two hours does not comply with Fourth Circuit case law and is inadequate to address moderate limitations in that mental functioning domain. And she contends that the restriction to perform work in two-hour intervals tracks the customary work schedule. So it is no limitation at all. The Commissioner contends that the evidence supports the limitation.

The undersigned finds that an ability to sustain concentration, persistence, or pace for two hours at a time, without more, falls short of addressing moderate limitations in that area. The other non-exertional limitations included in the RFC do not deal with this mental functioning domain. And the ALJ did not find that Priest's deficits resulted in no functional loss. So remand is warranted.

At step three, the ALJ considered the four broad categories of mental functioning. She found that Priest had mild limitations understanding, remembering, or applying information. Tr. at 75. And she was moderately limited in the other three mental function domains, including concentrating, persisting, and maintaining pace. Tr. at 75–76. The ALJ noted that Priest's stomach issues caused trouble with her ability to focus. Tr. at 75. The consultative examiner found that she could sustain attention and concentration and tolerate a limited amount of stress. Tr. at 76.

Because the ALJ determined that Priest had moderate difficulties in her ability to maintain concentration, persistence, or pace, the ALJ needed to account for that limitation in the RFC or to explain why required she needed none. *Mascio*, 780 F.3d at 638. The RFC determined that Priest

11

could sustain concentration, persistence, and pace in two-hour increments with limited interactions and few, if any, changes. Tr. at 76.

Priest claims that working in two-hour segments is no limitation at all because normal breaks occur about every two hours in an eight-hour workday. The premise of this claim begins with Social Security Regulations' guidance that a normal workday includes morning and afternoon breaks and a lunch period. SSR 96-96. So "customary breaks . . . would reasonably occur approximately every two hours." *Hawley* v. *Astrue*, No. 1:09-CV-246, 2012 WL 1268475, *7 (M.D.N.C. April 16, 2012).

Priest cites *Tucker* v. *Saul* to support her position. No. 1:18-CV-481, 2019 WL 3591795 (M.D.N.C. Aug. 6, 2019), *adopted by* 2019 WL 5783544 (M.D.N.C. Aug. 26, 2019). Like Priest, *Tucker* involved a claimant who had moderate limitations in maintaining concentration, persistence, or pace. *Id*. at *4. The claimant challenged the sufficiency of the RFC which limited her to concentrating on a task for two hours before changing tasks or being redirected. *Id*. at *1.

As the court found, working on a task in two-hour increments, with no further explanation, did not adequately address a moderate limitation in staying on task. *Id*. at *5. Allowing no breaks in addition to those a normal workday encompassed, there was no restriction to account for the claimant's moderate limitations in maintaining concentration, persistence, or pace. *Id*. at *5, 6.

Priest's reliance on *Tucker* is persuasive because the RFC limited her to working in two-hour intervals with no additional restrictions to address her ability to concentrate, persist, and maintain pace. Tr. at 76. Restrictions on dealing with coworkers, supervisors, and the public address the domain of interacting with others. And constraining workplace changes is a limitation related to adapting or managing oneself. *See Patrick* v. *Bisignano*, No. 4:24-CV-00097-RN, 2025

12

WL 2637664, at *12 (E.D.N.C. Sept. 12, 2025) (noting that adjusting to changes is a competency of adapting or managing oneself) (citing 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(4)).

Other courts have found that working in two-hour segments, with no additional restriction on the types of tasks, is inadequate to address a claimant's moderate limitations in concentration, persistence, and pace. *See April T.* v. *Kijakazi*, No. CV 22-2820-BAH, 2023 WL 5721719, at *3 (D. Md. Sept. 5, 2023) (finding a limitation to working in two-hour intervals, without more, does not fully address moderate limitations in concentration, persistence, and pace); *Caitrin M.* v. *Kijakazi*, No. CV 22-2785-BAH, 2023 WL 5300318, at *4 (D. Md. Aug. 17, 2023) (limiting a claimant to working in only two-hour increments as insufficient to account for a moderate CPP limitations because breaks at two-hour intervals are customary even for those without limitations); *Richardson* v. *Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for her ability to concentrate and stay on task."). When courts have concluded that remaining on task for two hours complies with *Mascio,* the RFCs included other limitations like performing simple tasks. *See Gregory T.* v. *O'Malley,* No. 1:23-CV-00514, 2024 WL 2821797, at *9 (S.D.W. Va. Apr. 10, 2024), *adopted by* 2024 WL 2819532 (S.D.W. Va. June 3, 2024); *Christensen* v. *Saul*, No. 1:19-CV-68, 2019 WL 6359764, at *6 (W.D.N.C. Nov. 27, 2019).

The undersigned thus concludes that the RFC's two-hour work segment restriction, alone, is insufficient to address moderate limitations in concentration, persistence, and pace.[3] The ALJ did not conclude that the step three findings caused no functional limitations in determining

---

[3] The Commissioner states that the ALJ accounted for Priest's limitations by including the types of tasks, interactions, and changes she could tolerate. D.E. 14 at 17. The undersigned disagrees that the RFC reflects a finding about the types of tasks Priest could perform since the two-hour interval restriction does not address what type of work is done but the manner of performance.

13

Priest's RFC. The RFC thus runs afoul of controlling case law. So remand is warranted on this issue.

### 2. Sit, Stand, and Walk in One-Hour Increments

Priest also argues that the ALJ failed to explain her finding that Priest could sit, stand, and walk in one-hour increments. So it is unclear whether alternating positions must be done on a fixed schedule (every hour) or if they can be done on demand. Nor is it clear whether she will be off task when alternating her position.

Priest's testimony appears to support a finding that she can sit, stand, and walk for one hour at a time. Tr. at 37–38. But even if her testimony provides the basis for the restriction, Priest's ability to do those activities depends on other factors. For instance, she could sit but needed a cushioned chair and the ability to lean forward. Tr. at 38. And she could stand for that amount of time if she were moving. *Id*.

As Priest points out, the ALJ did not clarify whether her finding of alternating positions was on a fixed schedule or at will. And there is no determination whether Priest would remain on-task when alternating her positions.

In sum, the ALJ's findings about Priest's abilities to sit, stand, and walk may partially endorse her statements. Yet it offers no explanation why it omits the conditions for her to perform each of those activities for one hour. The RFC determination also suffers from uncertainty about how Priest changes positions, at fixed times or at will, and whether she can do so while remaining on task. These issues require clarification and support grounds for remand.

### D. Medical Opinions About Mental Limitations

Priest contends that the RFC is flawed because it omits additional non-exertional restrictions assessed in the medical opinions and that the ALJ failed to offer grounds to reject

14

additional limitations. The Commissioner argues that the RFC accounts for all of Priest's well-supported limitations. The undersigned finds that the ALJ failed to offer a reasonable explanation for excluding other limitations assessed in the medical opinions.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities ...

> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* §§ 404.1520(a)(2), 416.913(a)(2).

The Regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors:

> (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support

15

his or her medical opinion(s) ... the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion."

*Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain their consideration of the other factors but need only do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *Id.*

The Regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). But when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio*, 780 F.3d at 637–40. It is not the court's "role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox*, 632 F.

16

App'x at 755. The ALJ's opinion contains internal unresolved conflicts and creates confusion over whether substantial evidence supports the RFC determination. *See Elkins* v. *Saul*, No. 4:20-CV-01369, 2021 WL 1884747, at *12 (remanding when the court was "left to guess" about how the ALJ assigned weight to a medical opinion where there was an internal inconsistency between the ALJ's discussion of the medical opinion and the RFC).

An ALJ need not adopt all the findings in a medical opinion he deems persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (noting that an ALJ need not defer to any medical opinion or prior administrative finding); *Turner* v. *Comm'r of Soc. Sec.,* No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of . . . a claimant's limitations just because the ALJ finds them to be generally persuasive.") (citing *Thomas* v. *Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).

But an ALJ cannot assign persuasive value to a medical opinion without addressing material conflicts between that opinion and the RFC. *Ezzell* v. *Berryhill*, 688 F. App'x 199, 201 (4th Cir. 2017). "[A]n ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC" absent adequate explanation of her reasoning. *Adams* v. *Comm'r of Soc. Sec.*, No. 3:20-CV-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022); *Clark* v. *Berryhill*, No. 5:17-CV-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018). An ALJ's explanation of why he rejects a limitation in an opinion found credible must allow a reviewing court to trace his reasoning. *See Saunders* v. *O'Malley,* No. 5:23-CV-48-RJ, 2024 WL 1116972, at *4 (E.D.N.C. Mar. 14, 2024) (finding remand required where ALJ failed to explain why he rejected a limitation to short instructions, despite finding the state agency psychologists' findings to be persuasive, given that limitation conflicted with jobs ALJ found claimant could perform); *Alonna A.* v. *Kijakazi*, No. CV 22-3115-CDA, 2023 WL

8373378, at *4 (D. Md. Dec. 1, 2023) (finding no logical bridge between the evidence and the RFC where the ALJ failed to explain why the limitations opined by sources whose opinions were found to be persuasive were not fully incorporated into the RFC) (citing *Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

The RFC determination restricts Priest to work that she can perform in two-hour intervals. Priest stated that she has significant back pain as well as anxiety. Tr. at 77. Her stomach issues also cause pain which interferes with her ability to focus. *Id*.

### 1. Consultative Psychological Examiner

The consultative psychological examiner found that Priest could understand, retain, and follow instructions and sustain attention and concentration for simple, repetitive tasks. Tr. at 79. She could relate to others and tolerate a limited amount of daily stress. *Id*.

The ALJ found persuasive the conclusion that Priest could understand, retain, and follow instructions because the consultant examined her, her medications kept her moods fairly stable, and she had no psychiatric hospitalization or counseling. *Id*. But the ALJ deemed the other limitations unpersuasive. *Id*. The ALJ remarked that Priest testified that she was unable to work because of physical ailments. *Id*. And the difficulties she had with focus from her stomach issues were more controlled. *Id*.

There are several issues with the ALJ's consideration of this medical opinion. First, the ALJ misstates Priest's testimony. The ALJ inquired about the biggest obstacle to her working. Tr. at 30. Priest replied, "The biggest impediment I believe would be even though I do have mental issues that I do deal with it's *mostly* my physical issues that I truly believe would keep me from holding down a job." *Id.* (emphasis added). She also stated that "it's not just physical pain . . . that I have. It's just what I feel is the most prominent and the biggest reason why I couldn't work." Tr.

18

at 34. And Priest later offered testimony about her mental health symptoms, including being forgetful and not paying attention. Tr. at 41–42.

So Priest did not state that her mental health conditions posed no impediment to work. To the contrary, she acknowledged them and characterized them as secondary to her physical limitations. Her testimony tracks the state agency reviewers' findings that her mental conditions were secondary to her physical impairments. Tr. at 52, 62. And her mental health conditions were characterized as severe impairments. *Id*.

It misstates the evidence to construe Priest's statement about the challenges to work caused by physical health to exclude any obstacles to work that mental health presented. The ALJ interpreted Priest's testimony as indicating more than it plainly stated. And the ALJ erred in discounting the consultative examiner's mental limitations based her improper reading of Priest's statement.

Second, that Priest may have experienced improvement in her stomach issues, which were the cause of her impaired focus, does not undermine the consultative examiner's findings. Priest testified that she suffered from "a multitude of stomach issues" which could cause pain and limit her ability to eat. Tr. at 34. If she did not eat, she became sluggish and could not focus. *Id*. She also stated that she could not eat if she did not take her medication for GERD. *Id*.

It is unclear what evidence supports the ALJ's conclusion that Priest's stomach issues improved. Even if medication helped her reflux, it is possible Priest's other stomach issues—she claimed there were several—persisted, resulting in continued interference with her ability to eat and maintain focus. Even allowing a premise that her stomach problems were more under control does not necessarily determine that the condition resolved or no longer caused her limitations.

19

So this explanation provides little support for rejecting the consultative psychological examiner's findings.

Third, the ALJ references Priest's lack of counseling. But the consultative examiner noted this in his report. Tr. at 549. And Priest points out that she regularly received mental health treatment from her psychiatrist.

The evidence shows that Priest's mental health impairments resulted in non-exertional limitations. The fact that the ALJ identified mental health conditions as severe impairments establishes that they caused more than a minimal effect on Priest's ability to perform basic work activities. At step three, she determined that Priest's impairments, both physical and mental, mildly limited her ability to understand, remember, and apply information. Tr. at 75 And her impairments caused moderate restrictions in concentrating, persisting, and maintaining pace, interacting with others, and adapting or managing herself. Tr. at 75–76. So her conditions affected her ability to perform the basic mental demands of work.

Whether her impairments result in an inability to work, the ALJ appears to suggest that Priest's mental conditions pose no challenge to substantial gainful employment. But there was evidence that Priest's mental impairments caused limitations. And the state agency psychological consultants and consultative examiner so determined. Tr. at 55–56, 65–67, 551.

Having failed to properly consider the consultative psychological examiner's assessment, and provide sound reasons to reject his findings, remand for further consideration of this evidence is appropriate.

### 2. State Agency Psychological Consultants

State agency psychological reviewers determined that Priest could perform simple, routine, repetitive tasks in a stable work environment with no extensive interactions and few, if any,

20

changes. Tr. at 81. The ALJ stated that she "agrees with these findings" because the consultants reviewed most of Priest's records in findings her moods remained stable with medication. *Id*. The ALJ also noted a lack of psychiatric hospitalizations or counseling. *Id*. She concluded that the findings were "unpersuasive." *Id*.

The undersigned agrees with the argument that the ALJ's statement that the reviewers' opinions were "unpersuasive" is a scrivener's error and that she intended to say they were "persuasive."

But the RFC does not address the reviews' determination that Priest was limited to simple, routine, repetitive tasks. And the ALJ did not explain why the RFC excludes any non-exertional restrictions that would address that finding. So it is unclear if the ALJ overlooked that limitation or if she rejected it, and why. There is thus a conflict in medical opinions deemed persuasive and the RFC which includes no restriction for simple, routine, repetitive tasks. This discrepancy requires remand.

So the undersigned recommends that the court grant Priest relief on this issue.

### III.    Conclusion

For all these reasons, the undersigned recommends that the court grant Priest's request for relief (D.E. 12, 15), deny Bisignano's request for relief (D.E. 14), and remand this matter to the Commissioner for further consideration.

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them.

The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: June 29, 2026

Robert T. Numbers, II
United States Magistrate Judge

22